**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No._____ |
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., | ) | **JURY TRIAL DEMANDED** |
| SAMSUNG TELECOMMUNICATIONS | ) | |
| AMERICA, LLC f/k/a SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA, L.P., | ) | |
| HIGH TECH COMPUTER CORP., a/k/a HTC | ) | |
| CORP., H.T.C. (B.V.I.) CORP., HTC | ) | |
| AMERICA, INC., LG ELECTRONICS, INC., | ) | |
| LG ELECTRONICS USA, INC., AND LG | ) | |
| ELECTRONICS MOBILECOMM U.S.A., INC. | ) | |
| d/b/a LG MOBILE PHONES, | ) | |
| | ) | |
| Defendants. | | |

---

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Affinity Labs of Texas, LLC ("Affinity Labs") for its causes of action against

Defendants, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung

Telecommunications America, LLC f/k/a/ Samsung Telecommunications America, LP (the

Samsung entities collectively "Samsung"), High Tech Computer Corp a/k/a HTC Corp., H.T.C.

(B.V.I.) Corp., HTC America, Inc. (the HTC entities collectively "HTC"), LG Electronics, Inc.,

LG Electronics USA, Inc., and LG Electronics MobileComm U.S.A., Inc. d/b/a LG Mobile

Phones (the LG entities collectively "LG"), states and alleges on knowledge and information and

belief as follows:

## PARTIES

1.       Plaintiff Affinity Labs is a Texas limited liability company having offices at 31884 RR 12, Dripping Springs, TX 78620.

2.       On information and belief, Defendant Samsung Electronics Co., Ltd. is a Korean corporation having its principal place of business at 250 2-ga Taepyung-ro, Jung-gu, Seoul 100-742, Korea.

3.       On information and belief, Defendant Samsung Electronics America, Inc. is a New York corporation having its principal place of business at 85 Challenger Road, Ridgefield Park, NJ 07660. Samsung Electronics America, Inc. has been authorized to do business in the State of Texas by the Texas Secretary of State.  Furthermore, Samsung Electronics America, Inc. has designated CT Corporation System, 350 N. Saint Paul Street, Suite 2900, Dallas, TX 75201, as its representative to accept service of process within the State of Texas.

4.       On information and belief, Defendant Samsung Telecommunications America, LLC f/k/a Samsung Telecommunications America, L.P., is a Delaware corporation having its principal place of business at 1301 E. Lookout Drive, Richardson, TX 75082.

5.       On information and belief, Defendant HTC Corp. is a Taiwanese corporation having its principal place of business at 23 Xinghua Road, Taoyuan 330, Taiwan, Republic of China.

6.       On information and belief, Defendant HTC BVI is a British Virgin Islands corporation having its principal place of business at 3F, Omar Hodge Building, Wickhams Cay I, P.O. Box 362, Road Town, Tortola, British Virgin Islands.

7.       On information and belief, Defendant HTC America, Inc. is a Washington corporation having its principal place of business at 13920 SE Eastgate Way, Suite 200,

Bellevue, Washington 98005.  HTC America, Inc. has been authorized to do business in the State of Texas by the Texas Secretary of State.  Furthermore, HTC America, Inc. has designated National Registered Agents, Inc., 16055 Space Center Boulevard, Suite 235, Houston, TX 77062, as its representative to accept service of process within the State of Texas.

8.      On information and belief, Defendant LG Electronics, Inc. is a Korean corporation having its principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul 150-721, Korea.

9.      On information and belief, Defendant LG Electronics USA, Inc. is a Delaware corporation having its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, NJ 07632.  LG Electronics USA, Inc. has been authorized to do business in the State of Texas by the Texas Secretary of State.  Furthermore, LG Electronics USA, Inc. has designated United States Corporation Co., 211 E. 7th Street, Suite 620, Austin, TX 78701, as its representative to accept service of process within the State of Texas.

10.     On information and belief, Defendant LG Electronics MobileComm U.S.A., Inc. d/b/a LG Mobile Phones is a California corporation with a principal place of business at 10101 Old Grove Road, San Diego, CA 92131.  LG Electronics MobileComm U.S.A., Inc. d/b/a LG Mobile Phones has been authorized to do business in the State of Texas by the Texas Secretary of State.

## JURISDICTION

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281-285.

12.     This Court has personal jurisdiction over Defendants. Upon information and belief, Defendants have committed and continue to commit acts giving rise to this action within Texas and within this judicial district and Defendants have established minimum contacts within the forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. For example, Defendants have committed and continue to commit acts of infringement in this District, by among other things, offering to sell and selling products that infringe the Asserted Patents, including smartphones, tablets, and/or portable music players. In conducting their business in Texas and this judicial district, Defendants derive substantial revenue from infringing products being sold, used, imported, and/or offered for sale or providing service and support to Defendants' customers in Texas and this District, and will continue to do so unless enjoined by this Court.

## VENUE

13.     Venue in the Eastern District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants have committed acts within this judicial district giving rise to this action, and Defendants have and continue to conduct business in this judicial district, including one or more acts of selling, using, importing, and/or offering for sale infringing products or providing service and support to Defendants' customers in this District.

14.     Venue is further proper because defendant Samsung Telecommunications America, LLC f/k/a Samsung Telecommunications America, L.P., has its principal place of business in Texas and defendant HTC has an office located in this District, in Plano, Texas.

15.     Venue in the Eastern District of Texas is also proper because Affinity Labs is organized and governed by the limited liability company laws of Texas and is subject to taxes in

Texas.  Affinity Labs maintains a registered agent for service of process in Texas.  Affinity Labs maintains office space in Austin, Texas.

16.     Venue in the Eastern District of Texas is also proper because this District is centrally located to resolve common issues of fact among Affinity Labs and the Defendants.

17.     Venue in the Eastern District of Texas is also proper because of judicial economy.  Judge Ron Clark presided over *Affinity Labs of Texas, LLC v. BMW North America, LLC, et al.*, Civil Action No. 9:08-cv-164.  As part of that action the Court construed claims of two of the same patents asserted in the present action, U.S. Patent No. 7,324,833 and U.S. Patent No. 7,634,228, in the Orders Construing Claim Terms dated December 18, 2009 (Dkt. No. 326) and May 10, 2010 (Dkt. No. 386).

18.     Joinder of the Defendants is proper pursuant to 35 U.S.C. § 299(a) at least because Defendants' infringing products include, comply with, and/or utilize the Android Operating System, the practice of which by each Defendant results in infringement of the Asserted Patents.  In addition, questions of fact common to all of the Defendants will arise in the action at least because, upon information and belief, Defendants' infringing acts arise from their common acts of including, complying with, and/or utilizing the Android Operating System.

## BACKGROUND

### Affinity Labs

19.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

20.     Affinity Labs was founded in 2008 by Russell White and Harlie Frost.

21.     Russell White is a successful entrepreneur and patent attorney.  Mr. White grew up in Houston, Texas, and has an undergraduate degree in mechanical engineering from Texas

A&M.  Mr. White also graduated from the University of Temple Law School.  After earning his law degree, Mr. White co-founded SBC Knowledge Ventures, an entity within AT&T.

22.     Mr. White is also a prolific inventor.  Mr. White is listed as an inventor on at least twenty-two separate United States patents.

23.     On March 28, 2000, Mr. White and Kevin R. Imes filed a detailed patent application, No. 09/537,812 "the '812 application" with the United States Patent and Trademark Office ("PTO").

24.     The '812 application broadly addressed the problem of accessing, managing, and communicating digital audio and video content.  In doing so, the '812 application disclosed a number of inventions relating to creating a new media ecosystem with a portable electronic audio device such as an MP3 player or cell phone at its center.

25.     The '812 application also disclosed the ability to download music and playlists from an online store, or stream Internet radio, to the portable electronic device, and then connect the device to a second device such as an automobile with a display.  As disclosed in the '812 application, the music available on the portable device can then be displayed and selected using controls on an automobile stereo system, and played through the speakers.

26.     Mr. White and Mr. Imes made this disclosure in the '812 application over a year before the iPod was released in October 2001, approximately 3 years before the iTunes Store sold its first song, 7 years before the first iPhone was sold, 8 years before the App Store was launched, and 8 years before the functionality of having the music available on a portable device be displayed and selected using controls on an automobile stereo system and played through the speakers was available using an iPhone and some luxury vehicles.  This same connective

functionality did not become available on Android phones until more than 9 years after Mr. White and Mr. Imes filed the '812 application.

27.    Resulting from the '812 application, on March 6, 2007, the PTO issued United States Patent No. 7,187,947 entitled "System and Method for Communicating Selected Information to an Electronic Device" ("the '947 patent"), a copy of which is attached as Exhibit A.

28.    On January 29, 2008, the PTO issued United States Patent No. 7,324,833, entitled "System and Method for Connecting a Portable Audio Player to an Automobile Sound System" ("the '833 patent"), a copy of which is attached as Exhibit B.  The '833 patent was issued from a continuation application claiming priority to the '812 application.

29.    On December 15, 2009, the PTO issued United States Patent No. 7,634,228, entitled "Content Delivery System and Method" ("the '228 patent"), a copy of which is attached as Exhibit C.  The '228 patent was issued from a continuation application claiming priority to the '812 application.

30.    On May 31, 2011, the PTO issued United States Patent No. 7,953,390, entitled "Method for Content Delivery" ("the '390 patent"), a copy of which is attached as Exhibit D. The '390 patent was issued from a continuation application claiming priority to the '812 application.

31.    The '947, '833, '228, and '390 patents (collectively, "the Asserted Patents") are all in the same patent family and the Asserted Patents all claim priority to the '812 application, which was filed with the PTO on March 28, 2000 and issued as the '947 patent.

32.    The Asserted Patents have been cited by major businesses in the computer, software, communications, automotive, and mobile industries.  The Asserted Patents have been

cited in at least 123 patents and publications, with many of these patents assigned to corporations such as Apple, AT&T, Toyota, Google, Nokia, Bose, IBM, Hewlett-Packard, and Volkswagen.

33.     Affinity Labs holds legal title, by assignment, to all of the Asserted Patents.

## *Affinity Labs of Texas, LLC v. BMW N. Am., LLC, et al.*

34.     On August 27, 2008, Affinity Labs sued a number of defendants, including Hyundai Motor America, Inc.; Hyundai Motor Manufacturing Alabama, LLC ("Hyundai"); Kia Motors America, Inc. ("Kia"); and Volkswagen Group of America ("Volkswagen") in the Eastern District of Texas for infringement of two of the Asserted Patents in the present action—the '228 and '833 patents.  Affinity Labs alleged that Hyundai, Kia, and Volkswagen infringed the '228 and '833 patents by manufacturing, using, marketing, offering for sale, and/or selling of select automobiles with audio systems designed to integrate a portable digital media device with the automobile's on-screen display and user interface.

35.     The Court, the Honorable Ron Clark presiding, held a jury trial from October 18-22 and October 25-28, 2010 with defendants Hyundai, Kia, and Volkswagen.

36.     During the trial Hyundai, Kia, and Volkswagen asserted that claims 28 and 35 of the '833 patent and claims 3, 22, and 28 of the '228 patent were invalid as anticipated, obvious, or based on written description.

37.     On October 28, 2010, the jury by unanimous verdict found that Volkswagen and Hyundai directly and contributorily infringed and induced infringement of claims 28 and 35 of the '833 patent, and Volkswagen, Hyundai, and Kia directly and contributorily infringed and induced infringement of claims 3, 22, and 28 of the '228 patent. The jury awarded damages to Affinity Labs in the amount of $12,986,530.

38.     The jury rejected all of Volkswagen, Hyundai, and Kia's invalidity arguments and found that claims 28 and 35 of the '833 patent and claims 3, 22, and 28 of the '228 patent are not invalid.

39.     The jury also found that claims 28 and 35 of the '833 patent and claim 22 of the '228 patent are not anticipated, and that claims 28 and 35 of the '833 patent, and claims 3, 22, and 28 of the '228 patent are not obvious.

40.     On April 12, 2011, the Court ordered final judgment in favor of Affinity Labs in the amount of $12,986,530 in damages, $1,193,130 in pre-judgment interest, post-judgment interest calculated at the rate of 0.27%, and costs of court.

41.     On information and belief, one or more Defendants manufacture, use, sell, offer to sell, market, import, have manufactured, used, sold, offered to sell, marketed, and/or imported products that infringe or have infringed the '947, '833, '228, and/or '390 patent.

42.     As a result, Affinity Labs brings this action to seek damages and injunctive relief arising out of Defendants' infringing acts.

**<u>Samsung</u>**

43.     Samsung sells smartphones, tablets, and portable music players.  Products sold by Samsung include, but are not limited to, the Galaxy Note II smartphone, Galaxy S smartphone, Galaxy Tab 2 tablet, and Galaxy Player 5.0 portable music player.

44.     Samsung's smartphones, tablets, and portable music players each have a display and memory.  For example, the Galaxy Note II smartphone has a 5.5-inch display, two gigabytes of RAM, and 16, 32, or 64 gigabytes of flash memory.

45.     Samsung sells smartphones, tablets, and portable music players that are loaded with the Android Operating System when sold.  For example, when sold, the Galaxy Note II smartphone is loaded with the Android Operating System, version 4.1 (Jelly Bean).

46.     Samsung's smartphones, tablets, and portable music players have the ability to play music stored locally on the device.  For example, the Galaxy Note II smartphone has the ability play digitally compressed songs.

47.     Samsung's smartphones, tablets, and portable music players allow users to navigate through locally saved songs by name. For example, the Galaxy Note II smartphone allows users to navigate through a list of songs organized by name, and displays graphical items such as the song name and album art while playing digitally compressed songs.

48.     Samsung's smartphones, tablets, and portable music players have the ability to use Samsung's Music Hub feature.  Samsung's Music Hub is a subscription-based music service that enables customers to access over 3 million music and media tracks from most major record labels, which are streamed straight to select Samsung smartphones, televisions, tablets, and home theater systems via a web browser.  Through Samsung's Music Hub, at least, smartphone and tablet users can search for and purchase songs and albums, which can then be played through Samsung's smartphones and tablets.

49.     Samsung's smartphones, tablets, and portable music players have the ability to connect to a separate electronic device having a screen through use of a USB cable, allowing a user to use the separate electronic device's screen to navigate through songs stored on the smartphone, tablet, and/or portable music player, and select songs for playback via that separate electronic device.  For example, the Samsung Galaxy Note II is capable of connecting to a Ford automobile containing a Ford SYNC entertainment system via a USB cable.   Upon that

connection, the Ford SYNC system can display the names of songs stored on the Samsung Galaxy Note II.  By pressing soft buttons on the Ford SYNC system's display, a user can navigate through these songs and choose specific songs stored on the Samsung Galaxy Note II to be played through the automobile's speakers.

### HTC

50.     HTC sells smartphones and tablets.  Products sold by HTC include, but are not limited to, the One X smartphone, the One S smartphone, the Droid DNA smartphone, and the Flyer tablet.

51.      HTC's smartphones and tablets each have a display and memory.  For example, the HTC One X smartphone has a 4.7-inch display, one gigabyte of RAM, and 32 gigabytes of flash memory.

52.     HTC sells smartphones and tablets that can be connected to other electronic devices via a USB or Micro-USB port.  For example, the HTC One X smartphone has a micro-USB port through which it can be connected to other electronic devices.

53.     HTC sells smartphones and tablets that are loaded with the Android Operating System when sold.  For example, when sold, the HTC One X smartphone is loaded with the Android Operating System, version 4.0 (Ice Cream Sandwich).

54.     HTC's smartphones and tablets have the ability to play music stored locally on the device.  For example, the HTC One X smartphone has the ability play digitally compressed songs.

55.     HTC's smartphones and tablets allow users to navigate through locally saved songs by name.  For example, the HTC One X smartphone allows users to navigate through a list

of songs organized by name, and displays graphical items such as the song name and album art while playing digitally compressed songs.

56.     HTC's smartphones and tablets have the ability to connect to a separate electronic device having a screen through use of a USB cable, allowing a user to use the separate electronic device's screen to navigate through songs stored on the smartphone and/or tablet and select songs for playback via that separate electronic device.  For example, the HTC One X smartphone is capable of connecting to a Ford automobile containing a Ford SYNC entertainment system via a USB cable.  Upon that connection, the Ford SYNC system can display the names of songs stored on the HTC One X smartphone.  By pressing soft buttons on the Ford SYNC system's display, a user can navigate through these songs and choose specific songs stored on the HTC One X smartphone to be played through the automobile's speakers.

## LG

57.     LG sells smartphones.  Products sold by LG include, but are not limited to, the Optimus G smartphone, Intuition smartphone, Mach smartphone, and Splendor smartphone.

58.     LG's smartphones each have a display and memory. For example, the LG Optimus G smartphone has a 4.7-inch display, two gigabytes of RAM, and 32 gigabytes of flash memory.

59.     LG sells smartphones that can be connected to other electronic devices via a USB or Micro-USB port.  For example, the LG Optimus G smartphone has a micro-USB port through which it can be connected to other electronic devices.

60.     LG sells smartphones that are loaded with the Android Operating System when sold.  For example, when sold, the LG Optimus G smartphone is loaded with the Android Operating System, version 4.0 (Ice Cream Sandwich).

61.     LG's smartphones have the ability to play music stored locally on the device. For example, the LG Optimus G smartphone has the ability play digitally compressed songs.

62.     LG's smartphones allow users to navigate through locally saved songs by name. For example, the LG Optimus G smartphone allows users to navigate through a list of songs organized by name, and displays graphical items such as the song name and album art while playing digitally compressed songs.

63.     LG's smartphones have the ability to connect to a separate electronic device having a screen through use of a USB cable, allowing a user to use the separate electronic device's screen to navigate through songs stored on the smartphone and select songs for playback via that separate electronic device.  For example, the LG Optimus G smartphone is capable of connecting to a Ford automobile containing a Ford SYNC entertainment system via a USB cable.  Upon that connection, the Ford SYNC system can display the names of songs stored on the LG Optimus G smartphone.  By pressing soft buttons on the Ford SYNC system's display, a user can navigate through these songs and choose specific songs stored on the LG Optimus G smartphone to be played through the automobile's speakers.

## COUNT I

### Infringement of U.S. Patent No. 7,187,947 by Samsung

64.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

65.     Upon information and belief, in violation of 35 U.S.C. § 271(a), Samsung has infringed, and if not enjoined, will continue to infringe the '947 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '947 patent, literally and/or under the

doctrine of equivalents; (2) inducing infringement of one or more claims of the '947 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '947 patent, in violation of 35 U.S.C. § 271(c).  In particular, Samsung infringes one or more claims of the '947 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II; and (2) using Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, as part of the audio system and methods claimed in the '947 patent.

66.     Also on information and belief, Samsung markets and sells smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II.  Samsung markets and sells its smartphones, tablets, and portable music players to customers and potential customers that include, for example, companies in the smartphone, tablet, and portable music player industries in the United States, in addition to individual customers in the United States. Samsung has been marketing and selling its smartphones, tablets, and portable music players while also having knowledge of the '947 patent.  Furthermore, Samsung has had knowledge of the '947 patent at least as of the filing of this Complaint.

67.     In addition, on information and belief, Samsung has actively induced and is actively inducing others, such as Samsung's customers, to directly infringe the '947 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, Samsung and/or its distributors or representatives have sold or otherwise provided smartphones, tablets, and portable music players—including for example, the Samsung Galaxy Note II—to third parties, such as Samsung's customers.  Samsung's customers, on

information and belief, have directly infringed and are directly infringing the '947 patent. Moreover, Samsung specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '947 patent. For example, by marketing and selling its smartphones, tablets, and portable music players, Samsung has encouraged and is encouraging its customers to use its smartphones, tablets, and portable music players and, thus, to directly infringe the '947 patent. Furthermore, Samsung has had knowledge of the '947 patent at least as of the filing of this Complaint.

68.     Furthermore, on information and belief, Samsung has also contributed to and is contributing to direct infringement of the '947 patent by third parties, such as Samsung's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). For example, on information and belief, Samsung has contributed to and is contributing to infringement of the '947 patent by selling its customers smartphones, tablets, and portable music players, including for example, the Samsung Galaxy Note II—the use of which by Samsung's customers has directly infringed and is directly infringing the '947 patent. Furthermore, Samsung has had knowledge of the '947 patent at least as of the filing of this Complaint.

69.     Despite having knowledge of the '947 patent, Samsung has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '947 patent, such as Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, and has done so after receiving notice of the '947 patent, and Samsung has taken these actions without authorization from Affinity Labs.

70.     Samsung does not have a license or permission to use the claimed subject matter in the '947 patent.

71.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Samsung's infringement of the '947 patent.

72.     Samsung will continue to infringe the '947 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

73.     Affinity Labs is entitled to recover from Samsung the damages sustained by Affinity Labs as a result of Samsung's wrongful acts in an amount subject to proof at trial.

## COUNT II

### Infringement of U.S. Patent No. 7,187,947 by HTC

74.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

75.     Upon information and belief, in violation of 35 U.S.C. § 271(a), HTC has infringed, and if not enjoined, will continue to infringe the '947 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '947 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '947 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '947 patent, in violation of 35 U.S.C. § 271(c).  In particular, HTC infringes one or more claims of the '947 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of HTC smartphones and tablets, including at least the HTC One X; and (2) using HTC smartphones and tablets, including at least the HTC One X, as part of the audio system and methods claimed in the '947 patent.

76.     Also on information and belief, HTC markets and sells smartphones and tablets, including at least the HTC One X. HTC markets and sells its smartphones and tablets to customers and potential customers that include, for example, companies in the smartphone, and tablet industries in the United States, in addition to individual customers in the United States. HTC has been marketing and selling its smartphones and tablets while also having knowledge of the '947 patent. Furthermore, HTC has had knowledge of the '947 patent at least as of the filing of this Complaint.

77.     In addition, on information and belief, HTC has actively induced and is actively inducing others, such as HTC's customers, to directly infringe the '947 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b). For example, on information and belief, HTC and/or its distributors or representatives have sold or otherwise provided smartphones and tablets—including for example, the HTC One X—to third parties, such as HTC's customers. HTC's customers, on information and belief, have directly infringed and are directly infringing the '947 patent. Moreover, HTC specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '947 patent. For example, by marketing and selling its smartphones and tablets, HTC has encouraged and is encouraging its customers to use its smartphones and tablets and, thus, to directly infringe the '947 patent. Furthermore, HTC has had knowledge of the '947 patent at least as of the filing of this Complaint.

78.     Furthermore, on information and belief, HTC has also contributed to and is contributing to direct infringement of the '947 patent by third parties, such as HTC's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). For example, on information and belief, HTC has contributed to and is contributing to infringement

of the '947 patent by selling its customers smartphones and tablets, including for example, the HTC One X—the use of which by HTC's customers has directly infringed and is directly infringing the '947 patent.  Furthermore, HTC has had knowledge of the '947 patent at least as of the filing of this Complaint.

79.     Despite having knowledge of the '947 patent, HTC has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '947 patent, such as HTC smartphones and tablets, including at least the HTC One X, and has done so after receiving notice of the '947 patent, and HTC has taken these actions without authorization from Affinity Labs.

80.     HTC does not have a license or permission to use the claimed subject matter in the '947 patent.

81.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of HTC's infringement of the '947 patent.

82.     HTC will continue to infringe the '947 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

83.     Affinity Labs is entitled to recover from HTC the damages sustained by Affinity Labs as a result of HTC's wrongful acts in an amount subject to proof at trial.

## COUNT III

## Infringement of U.S. Patent No. 7,187,947 by LG

84.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

85.     Upon information and belief, in violation of 35 U.S.C. § 271(a), LG has infringed, and if not enjoined, will continue to infringe the '947 patent by (1) manufacturing,

using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '947 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '947 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '947 patent, in violation of 35 U.S.C. § 271(c). In particular, LG infringes one or more claims of the '947 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of LG smartphones, including at least the LG Optimus G; and (2) using LG smartphones, including at least the LG Optimus G, as part of the audio system and methods claimed in the '947 patent.

86.     Also on information and belief, LG markets and sells smartphones, including at least the LG Optimus G.  LG markets and sells its smartphones to customers and potential customers that include, for example, companies in the smartphone industry in the United States, in addition to individual customers in the United States.  LG has been marketing and selling its smartphones while also having knowledge of the '947 patent.  Furthermore, LG has had knowledge of the '947 patent at least as of the filing of this Complaint.

87.     In addition, on information and belief, LG has actively induced and is actively inducing others, such as LG's customers, to directly infringe the '947 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, LG and/or its distributors or representatives have sold or otherwise provided smartphones—including for example, the LG Optimus G—to third parties, such as LG's customers.  LG's customers, on information and belief, have directly infringed and are directly infringing the '947 patent.  Moreover, LG specifically intends for and encourages its customers

to use the Asserted Patents' technology in violation of the '947 patent.  For example, by marketing and selling its smartphones, LG has encouraged and is encouraging its customers to use its smartphones and, thus, to directly infringe the '947 patent.  Furthermore, LG has had knowledge of the '947 patent at least as of the filing of this Complaint.

88.     Furthermore, on information and belief, LG has also contributed to and is contributing to direct infringement of the '947 patent by third parties, such as LG's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c).  For example, on information and belief, LG has contributed to and is contributing to infringement of the '947 patent by selling its customers smartphones, including for example, the LG Optimus G—the use of which by LG's customers has directly infringed and is directly infringing the '947 patent. Furthermore, LG has had knowledge of the '947 patent at least as of the filing of this Complaint.

89.     Despite having knowledge of the '947 patent, LG has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '947 patent, such as LG smartphones, including at least the LG Optimus G, and has done so after receiving notice of the '947 patent, and LG has taken these actions without authorization from Affinity Labs.

90.     LG does not have a license or permission to use the claimed subject matter in the '947 patent.

91.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of LG's infringement of the '947 patent.

92.     LG will continue to infringe the '947 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

93.     Affinity Labs is entitled to recover from LG the damages sustained by Affinity Labs as a result of LG's wrongful acts in an amount subject to proof at trial.

## COUNT IV

### Infringement of U.S. Patent No. 7,324,833 by Samsung

94.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

95.     Upon information and belief, in violation of 35 U.S.C. § 271(a), Samsung has infringed, and if not enjoined, will continue to infringe the '833 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '833 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '833 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '833 patent, in violation of 35 U.S.C. § 271(c).  In particular, Samsung infringes one or more claims of the '833 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II; and (2) using Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, as part of the audio system and methods claimed in the '833 patent.

96.     Also on information and belief, Samsung markets and sells smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II.  Samsung markets and sells its smartphones, tablets, and portable music players to customers and potential customers that include, for example, companies in the smartphone, tablet, and portable music player industries in the United States, in addition to individual customers in the United States. Samsung has been marketing and selling its smartphones, tablets, and portable music players

while also having knowledge of the '833 patent.  Furthermore, Samsung has had knowledge of the '833 patent at least as of the filing of this Complaint.

97.      In addition, on information and belief, Samsung has actively induced and is actively inducing others, such as Samsung's customers, to directly infringe the '833 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, Samsung and/or its distributors or representatives have sold or otherwise provided smartphones, tablets, and portable music players—including for example, the Samsung Galaxy Note II—to third parties, such as Samsung's customers.   Samsung's customers, on information and belief, have directly infringed and are directly infringing the '833 patent. Moreover, Samsung specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '833 patent.  For example, by marketing and selling its smartphones, tablets, and portable music players, Samsung has encouraged and is encouraging its customers to use its smartphones, tablets, and portable music players and, thus, to directly infringe the '833 patent.  Furthermore, Samsung has had knowledge of the '833 patent at least as of the filing of this Complaint.

98.      Furthermore, on information and belief, Samsung has also contributed to and is contributing to direct infringement of the '833 patent by third parties, such as Samsung's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). For example, on information and belief, Samsung has contributed to and is contributing to infringement of the '833 patent by selling its customers smartphones, tablets, and portable music players, including for example, the Samsung Galaxy Note II—the use of which by Samsung's customers has directly infringed and is directly infringing the '833 patent.   Furthermore, Samsung has had knowledge of the '833 patent at least as of the filing of this Complaint.

99.     Despite having knowledge of the '833 patent, Samsung has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '833 patent, such as Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, and has done so after receiving notice of the '833 patent, and Samsung has taken these actions without authorization from Affinity Labs.

100.    Samsung does not have a license or permission to use the claimed subject matter in the '833 patent.

101.    Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Samsung's infringement of the '833 patent.

102.    Samsung will continue to infringe the '833 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

103.    Affinity Labs is entitled to recover from Samsung the damages sustained by Affinity Labs as a result of Samsung's wrongful acts in an amount subject to proof at trial.

## COUNT V

## Infringement of U.S. Patent No. 7,324,833 by HTC

104.    Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

105.    Upon information and belief, in violation of 35 U.S.C. § 271(a), HTC has infringed, and if not enjoined, will continue to infringe the '833 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '833 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '833 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more

claims of the '833 patent, in violation of 35 U.S.C. § 271(c). In particular, HTC infringes one or more claims of the '833 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of HTC smartphones and tablets, including at least the HTC One X; and (2) using HTC smartphones and tablets, including at least the HTC One X, as part of the audio system and methods claimed in the '833 patent.

106.    Also on information and belief, HTC markets and sells smartphones and tablets, including at least the HTC One X.   HTC markets and sells its smartphones and tablets to customers and potential customers that include, for example, companies in the smartphone, and tablet industries in the United States, in addition to individual customers in the United States. HTC has been marketing and selling its smartphones and tablets while also having knowledge of the '833 patent.  Furthermore, HTC has had knowledge of the '833 patent at least as of the filing of this Complaint.

107.    In addition, on information and belief, HTC has actively induced and is actively inducing others, such as HTC's customers, to directly infringe the '833 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, HTC and/or its distributors or representatives have sold or otherwise provided smartphones and tablets—including for example, the HTC One X—to third parties, such as HTC's customers.  HTC's customers, on information and belief, have directly infringed and are directly infringing the '833 patent.  Moreover, HTC specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '833 patent.  For example, by marketing and selling its smartphones and tablets, HTC has encouraged and is encouraging its customers to use its smartphones and tablets and, thus, to directly infringe the '833 patent.

Furthermore, HTC has had knowledge of the '833 patent at least as of the filing of this Complaint.

108.     Furthermore, on information and belief, HTC has also contributed to and is contributing to direct infringement of the '833 patent by third parties, such as HTC's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c).  For example, on information and belief, HTC has contributed to and is contributing to infringement of the '833 patent by selling its customers smartphones and tablets, including for example, the HTC One X—the use of which by HTC's customers has directly infringed and is directly infringing the '833 patent.  Furthermore, HTC has had knowledge of the '833 patent at least as of the filing of this Complaint.

109.     Despite having knowledge of the '833 patent, HTC has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '833 patent, such as HTC smartphones and tablets, including at least the HTC One X, and has done so after receiving notice of the '833 patent, and HTC has taken these actions without authorization from Affinity Labs.

110.     HTC does not have a license or permission to use the claimed subject matter in the '833 patent.

111.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of HTC's infringement of the '833 patent.

112.     HTC will continue to infringe the '833 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

113.     Affinity Labs is entitled to recover from HTC the damages sustained by Affinity Labs as a result of HTC's wrongful acts in an amount subject to proof at trial.

## COUNT VI

### Infringement of U.S. Patent No. 7,324,833 by LG

114.    Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

115.    Upon information and belief, in violation of 35 U.S.C. § 271(a), LG has infringed, and if not enjoined, will continue to infringe the '833 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '833 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '833 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '833 patent, in violation of 35 U.S.C. § 271(c). In particular, LG infringes one or more claims of the '833 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of LG smartphones, including at least the LG Optimus G; and (2) using LG smartphones, including at least the LG Optimus G, as part of the audio system and methods claimed in the '833 patent.

116.    Also on information and belief, LG markets and sells smartphones, including at least the LG Optimus G.  LG markets and sells its smartphones to customers and potential customers that include, for example, companies in the smartphone industry in the United States, in addition to individual customers in the United States.  LG has been marketing and selling its smartphones while also having knowledge of the '833 patent.  Furthermore, LG has had knowledge of the '833 patent at least as of the filing of this Complaint.

117.     In addition, on information and belief, LG has actively induced and is actively inducing others, such as LG's customers, to directly infringe the '833 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, LG and/or its distributors or representatives have sold or otherwise provided smartphones—including for example, the LG Optimus G—to third parties, such as LG's customers.  LG's customers, on information and belief, have directly infringed and are directly infringing the '833 patent.  Moreover, LG specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '833 patent.  For example, by marketing and selling its smartphones, LG has encouraged and is encouraging its customers to use its smartphones and, thus, to directly infringe the '833 patent.  Furthermore, LG has had knowledge of the '833 patent at least as of the filing of this Complaint.

118.     Furthermore, on information and belief, LG has also contributed to and is contributing to direct infringement of the '833 patent by third parties, such as LG's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c).  For example, on information and belief, LG has contributed to and is contributing to infringement of the '833 patent by selling its customers smartphones, including for example, the LG Optimus G—the use of which by LG's customers has directly infringed and is directly infringing the '833 patent.  Furthermore, LG has had knowledge of the '833 patent at least as of the filing of this Complaint.

119.     Despite having knowledge of the '833 patent, LG has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '833 patent, such as LG smartphones, including at least the LG Optimus G, and has done so after receiving notice of the '833 patent, and LG has taken these actions without authorization from Affinity Labs.

120.    LG does not have a license or permission to use the claimed subject matter in the '833 patent.

121.    Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of LG's infringement of the '833 patent.

122.    LG will continue to infringe the '833 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

123.    Affinity Labs is entitled to recover from LG the damages sustained by Affinity Labs as a result of LG's wrongful acts in an amount subject to proof at trial.

## COUNT VII

## Infringement of U.S. Patent No. 7,634,228 by Samsung

124.    Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

125.    Upon information and belief, in violation of 35 U.S.C. § 271(a), Samsung has infringed, and if not enjoined, will continue to infringe the '228 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '228 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '228 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '228 patent, in violation of 35 U.S.C. § 271(c). In particular, Samsung infringes one or more claims of the '228 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II; and (2) using Samsung

smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, as part of the audio system and methods claimed in the '228 patent.

126.     Also on information and belief, Samsung markets and sells smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II.  Samsung markets and sells its smartphones, tablets, and portable music players to customers and potential customers that include, for example, companies in the smartphone, tablet, and portable music player industries in the United States, in addition to individual customers in the United States. Samsung has been marketing and selling its smartphones, tablets, and portable music players while also having knowledge of the '228 patent.  Furthermore, Samsung has had knowledge of the '228 patent at least as of the filing of this Complaint.

127.     In addition, on information and belief, Samsung has actively induced and is actively inducing others, such as Samsung's customers, to directly infringe the '228 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, Samsung and/or its distributors or representatives have sold or otherwise provided smartphones, tablets, and portable music players—including for example, the Samsung Galaxy Note II—to third parties, such as Samsung's customers.   Samsung's customers, on information and belief, have directly infringed and are directly infringing the '228 patent. Moreover, Samsung specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '228 patent.  For example, by marketing and selling its smartphones, tablets, and portable music players, Samsung has encouraged and is encouraging its customers to use its smartphones, tablets, and portable music players and, thus, to directly infringe the '228 patent.  Furthermore, Samsung has had knowledge of the '228 patent at least as of the filing of this Complaint.

128.     Furthermore, on information and belief, Samsung has also contributed to and is contributing to direct infringement of the '228 patent by third parties, such as Samsung's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). For example, on information and belief, Samsung has contributed to and is contributing to infringement of the '228 patent by selling its customers smartphones, tablets, and portable music players, including for example, the Samsung Galaxy Note II—the use of which by Samsung's customers has directly infringed and is directly infringing the '228 patent.   Furthermore, Samsung has had knowledge of the '228 patent at least as of the filing of this Complaint.

129.     Despite having knowledge of the '228 patent, Samsung has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '228 patent, such as Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, and has done so after receiving notice of the '228 patent, and Samsung has taken these actions without authorization from Affinity Labs.

130.     Samsung does not have a license or permission to use the claimed subject matter in the '228 patent.

131.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Samsung's infringement of the '228 patent.

132.     Samsung will continue to infringe the '228 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

133.     Affinity Labs is entitled to recover from Samsung the damages sustained by Affinity Labs as a result of Samsung's wrongful acts in an amount subject to proof at trial.

## COUNT VIII

### Infringement of U.S. Patent No. 7,634,228 by HTC

134.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

135.     Upon information and belief, in violation of 35 U.S.C. § 271(a), HTC has infringed, and if not enjoined, will continue to infringe the '228 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '228 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '228 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '228 patent, in violation of 35 U.S.C. § 271(c). In particular, HTC infringes one or more claims of the '228 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of HTC smartphones and tablets, including at least the HTC One X; and (2) using HTC smartphones and tablets, including at least the HTC One X, as part of the audio system and methods claimed in the '228 patent.

136.     Also on information and belief, HTC markets and sells smartphones and tablets, including at least the HTC One X.  HTC markets and sells its smartphones and tablets to customers and potential customers that include, for example, companies in the smartphone, and tablet industries in the United States, in addition to individual customers in the United States. HTC has been marketing and selling its smartphones and tablets while also having knowledge of the '228 patent.  Furthermore, HTC has had knowledge of the '228 patent at least as of the filing of this Complaint.

137.     In addition, on information and belief, HTC has actively induced and is actively inducing others, such as HTC's customers, to directly infringe the '228 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, HTC and/or its distributors or representatives have sold or otherwise provided smartphones and tablets—including for example, the HTC One X—to third parties, such as HTC's customers.  HTC's customers, on information and belief, have directly infringed and are directly infringing the '228 patent.  Moreover, HTC specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '228 patent.  For example, by marketing and selling its smartphones and tablets, HTC has encouraged and is encouraging its customers to use its smartphones and tablets and, thus, to directly infringe the '228 patent.  Furthermore, HTC has had knowledge of the '228 patent at least as of the filing of this Complaint.

138.     Furthermore, on information and belief, HTC has also contributed to and is contributing to direct infringement of the '228 patent by third parties, such as HTC's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c).  For example, on information and belief, HTC has contributed to and is contributing to infringement of the '228 patent by selling its customers smartphones and tablets, including for example, the HTC One X—the use of which by HTC's customers has directly infringed and is directly infringing the '228 patent.  Furthermore, HTC has had knowledge of the '228 patent at least as of the filing of this Complaint.

139.     Despite having knowledge of the '228 patent, HTC has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '228 patent, such as HTC smartphones and tablets, including at least the HTC One X, and has done so after receiving

notice of the '228 patent, and HTC has taken these actions without authorization from Affinity Labs.

140.     HTC does not have a license or permission to use the claimed subject matter in the '228 patent.

141.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of HTC's infringement of the '228 patent.

142.     HTC will continue to infringe the '228 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

143.     Affinity Labs is entitled to recover from HTC the damages sustained by Affinity Labs as a result of HTC's wrongful acts in an amount subject to proof at trial.

## COUNT IX

## Infringement of U.S. Patent No. 7,634,228 by LG

144.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

145.     Upon information and belief, in violation of 35 U.S.C. § 271(a), LG has infringed, and if not enjoined, will continue to infringe the '228 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '228 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '228 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '228 patent, in violation of 35 U.S.C. § 271(c). In particular, LG infringes one or more claims of the '228 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use,

marketing of, sale, offer for sale, and/or importation of LG smartphones, including at least the LG Optimus G; and (2) using LG smartphones, including at least the LG Optimus G, as part of the audio system and methods claimed in the '228 patent.

146.    Also on information and belief, LG markets and sells smartphones, including at least the LG Optimus G.  LG markets and sells its smartphones to customers and potential customers that include, for example, companies in the smartphone industry in the United States, in addition to individual customers in the United States.  LG has been marketing and selling its smartphones while also having knowledge of the '228 patent.  Furthermore, LG has had knowledge of the '228 patent at least as of the filing of this Complaint.

147.    In addition, on information and belief, LG has actively induced and is actively inducing others, such as LG's customers, to directly infringe the '228 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, LG and/or its distributors or representatives have sold or otherwise provided smartphones—including for example, the LG Optimus G—to third parties, such as LG's customers.  LG's customers, on information and belief, have directly infringed and are directly infringing the '228 patent.  Moreover, LG specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '228 patent.  For example, by marketing and selling its smartphones, LG has encouraged and is encouraging its customers to use its smartphones and, thus, to directly infringe the '228 patent.  Furthermore, LG has had knowledge of the '228 patent at least as of the filing of this Complaint.

148.    Furthermore, on information and belief, LG has also contributed to and is contributing to direct infringement of the '228 patent by third parties, such as LG's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c).  For example,

on information and belief, LG has contributed to and is contributing to infringement of the '228 patent by selling its customers smartphones, including for example, the LG Optimus G—the use of which by LG's customers has directly infringed and is directly infringing the '228 patent. Furthermore, LG has had knowledge of the '228 patent at least as of the filing of this Complaint.

149.    Despite having knowledge of the '228 patent, LG has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '228 patent, such as LG smartphones, including at least the LG Optimus G, and has done so after receiving notice of the '228 patent, and LG has taken these actions without authorization from Affinity Labs.

150.    LG does not have a license or permission to use the claimed subject matter in the '228 patent.

151.    Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of LG's infringement of the '228 patent.

152.    LG will continue to infringe the '228 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

153.    Affinity Labs is entitled to recover from LG the damages sustained by Affinity Labs as a result of LG's wrongful acts in an amount subject to proof at trial.

## COUNT X

### Infringement of U.S. Patent No. 7,953,390 by Samsung

154.    Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

155.    Upon information and belief, in violation of 35 U.S.C. § 271(a), Samsung has infringed, and if not enjoined, will continue to infringe the '390 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and

services that are covered by one or more claims of the '390 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '390 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '390 patent, in violation of 35 U.S.C. § 271(c). In particular, Samsung infringes one or more claims of the '390 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II; and (2) using Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, as part of the audio system and methods claimed in the '390 patent.

156.     Also on information and belief, Samsung markets and sells smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II.  Samsung markets and sells its smartphones, tablets, and portable music players to customers and potential customers that include, for example, companies in the smartphone, tablet, and portable music player industries in the United States, in addition to individual customers in the United States. Samsung has been marketing and selling its smartphones, tablets, and portable music players while also having knowledge of the '390 patent.  Furthermore, Samsung has had knowledge of the '390 patent at least as of the filing of this Complaint.

157.     In addition, on information and belief, Samsung has actively induced and is actively inducing others, such as Samsung's customers, to directly infringe the '390 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, Samsung and/or its distributors or representatives have sold or otherwise provided smartphones, tablets, and portable music players—including for example, the Samsung

Galaxy Note II—to third parties, such as Samsung's customers.   Samsung's customers, on information and belief, have directly infringed and are directly infringing the '390 patent. Moreover, Samsung specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '390 patent.   For example, by marketing and selling its smartphones, tablets, and portable music players, Samsung has encouraged and is encouraging its customers to use its smartphones, tablets, and portable music players and, thus, to directly infringe the '390 patent.   Furthermore, Samsung has had knowledge of the '390 patent at least as of the filing of this Complaint.

158.   Furthermore, on information and belief, Samsung has also contributed to and is contributing to direct infringement of the '390 patent by third parties, such as Samsung's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). For example, on information and belief, Samsung has contributed to and is contributing to infringement of the '390 patent by selling its customers smartphones, tablets, and portable music players, including for example, the Samsung Galaxy Note II—the use of which by Samsung's customers has directly infringed and is directly infringing the '390 patent.   Furthermore, Samsung has had knowledge of the '390 patent at least as of the filing of this Complaint.

159.   Despite having knowledge of the '390 patent, Samsung has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '390 patent, such as Samsung smartphones, tablets, and portable music players, including at least the Samsung Galaxy Note II, and has done so after receiving notice of the '390 patent, and Samsung has taken these actions without authorization from Affinity Labs.

160.   Samsung does not have a license or permission to use the claimed subject matter in the '390 patent.

161.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Samsung's infringement of the '390 patent.

162.     Samsung will continue to infringe the '390 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

163.     Affinity Labs is entitled to recover from Samsung the damages sustained by Affinity Labs as a result of Samsung's wrongful acts in an amount subject to proof at trial.

## COUNT XI

## Infringement of U.S. Patent No. 7,953,390 by HTC

164.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

165.     Upon information and belief, in violation of 35 U.S.C. § 271(a), HTC has infringed, and if not enjoined, will continue to infringe the '390 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '390 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '390 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '390 patent, in violation of 35 U.S.C. § 271(c). In particular, HTC infringes one or more claims of the '390 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of HTC smartphones and tablets, including at least the HTC One X; and (2) using HTC smartphones and tablets, including at least the HTC One X, as part of the audio system and methods claimed in the '390 patent.

166.     Also on information and belief, HTC markets and sells smartphones and tablets, including at least the HTC One X.   HTC markets and sells its smartphones and tablets to customers and potential customers that include, for example, companies in the smartphone, and tablet industries in the United States, in addition to individual customers in the United States. HTC has been marketing and selling its smartphones and tablets while also having knowledge of the '390 patent.  Furthermore, HTC has had knowledge of the '390 patent at least as of the filing of this Complaint.

167.     In addition, on information and belief, HTC has actively induced and is actively inducing others, such as HTC's customers, to directly infringe the '390 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, HTC and/or its distributors or representatives have sold or otherwise provided smartphones and tablets—including for example, the HTC One X—to third parties, such as HTC's customers.  HTC's customers, on information and belief, have directly infringed and are directly infringing the '390 patent.  Moreover, HTC specifically intends for and encourages its customers to use the Asserted Patents' technology in violation of the '390 patent.  For example, by marketing and selling its smartphones and tablets, HTC has encouraged and is encouraging its customers to use its smartphones and tablets and, thus, to directly infringe the '390 patent. Furthermore, HTC has had knowledge of the '390 patent at least as of the filing of this Complaint.

168.     Furthermore, on information and belief, HTC has also contributed to and is contributing to direct infringement of the '390 patent by third parties, such as HTC's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c).  For example, on information and belief, HTC has contributed to and is contributing to infringement

of the '390 patent by selling its customers smartphones and tablets, including for example, the HTC One X—the use of which by HTC's customers has directly infringed and is directly infringing the '390 patent.  Furthermore, HTC has had knowledge of the '390 patent at least as of the filing of this Complaint.

169.     Despite having knowledge of the '390 patent, HTC has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '390 patent, such as HTC smartphones and tablets, including at least the HTC One X, and has done so after receiving notice of the '390 patent, and HTC has taken these actions without authorization from Affinity Labs.

170.     HTC does not have a license or permission to use the claimed subject matter in the '390 patent.

171.     Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of HTC's infringement of the '390 patent.

172.     HTC will continue to infringe the '390 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

173.     Affinity Labs is entitled to recover from HTC the damages sustained by Affinity Labs as a result of HTC's wrongful acts in an amount subject to proof at trial.

## COUNT XII

## Infringement of U.S. Patent No. 7,953,390 by LG

174.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

175.     Upon information and belief, in violation of 35 U.S.C. § 271(a), LG has infringed, and if not enjoined, will continue to infringe the '390 patent by (1) manufacturing,

using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '390 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '390 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '390 patent, in violation of 35 U.S.C. § 271(c). In particular, LG infringes one or more claims of the '390 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of LG smartphones, including at least the LG Optimus G; and (2) using LG smartphones, including at least the LG Optimus G, as part of the audio system and methods claimed in the '390 patent.

176.    Also on information and belief, LG markets and sells smartphones, including at least the LG Optimus G.  LG markets and sells its smartphones to customers and potential customers that include, for example, companies in the smartphone industry in the United States, in addition to individual customers in the United States.  LG has been marketing and selling its smartphones while also having knowledge of the '390 patent.  Furthermore, LG has had knowledge of the '390 patent at least as of the filing of this Complaint.

177.    In addition, on information and belief, LG has actively induced and is actively inducing others, such as LG's customers, to directly infringe the '390 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b).  For example, on information and belief, LG and/or its distributors or representatives have sold or otherwise provided smartphones—including for example, the LG Optimus G—to third parties, such as LG's customers.  LG's customers, on information and belief, have directly infringed and are directly infringing the '390 patent.  Moreover, LG specifically intends for and encourages its customers

to use the Asserted Patents' technology in violation of the '390 patent.  For example, by marketing and selling its smartphones, LG has encouraged and is encouraging its customers to use its smartphones and, thus, to directly infringe the '390 patent.  Furthermore, LG has had knowledge of the '390 patent at least as of the filing of this Complaint.

178.    Furthermore, on information and belief, LG has also contributed to and is contributing to direct infringement of the '390 patent by third parties, such as LG's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c).  For example, on information and belief, LG has contributed to and is contributing to infringement of the '390 patent by selling its customers smartphones, including for example, the LG Optimus G—the use of which by LG's customers has directly infringed and is directly infringing the '390 patent. Furthermore, LG has had knowledge of the '390 patent at least as of the filing of this Complaint.

179.    Despite having knowledge of the '390 patent, LG has knowingly and willfully made, used, offered for sale, sold, and/or imported products that infringe the '390 patent, such as LG smartphones, including at least the LG Optimus G, and has done so after receiving notice of the '390 patent, and LG has taken these actions without authorization from Affinity Labs.

180.    LG does not have a license or permission to use the claimed subject matter in the '390 patent.

181.    Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of LG's infringement of the '390 patent.

182.    LG will continue to infringe the '390 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

183.    Affinity Labs is entitled to recover from LG the damages sustained by Affinity Labs as a result of LG's wrongful acts in an amount subject to proof at trial.

## DEMAND FOR TRIAL BY JURY

Affinity Labs demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Affinity Labs prays for the following relief:

1.    A declaration that Samsung, HTC, and LG have infringed and are infringing the '947, '833, '228, and '390 patents, and are liable to Affinity Labs for infringement;

2.    A declaration that Samsung, HTC, and LG's infringement of the '947, '833, '228, and '390 patents has been willful;

3.    An order enjoining Samsung, HTC, and LG from infringing the '947, '833, '228, and '390 patents;

4.    If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as a royalty bearing compulsory license or such other relief as the Court deems appropriate;

5.    An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate Affinity Labs for Samsung, HTC, and LG's infringement of the '947, '833, '228, and '390 patents, and that the damages be trebled pursuant to 35 U.S.C. § 284;

6.    An equitable accounting of damages owed by Defendants for the period of infringement of the '947, '833, '228, and '390 patents, following the period of damages established by Affinity Labs at trial.

7.    A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

8.    An award of costs, expenses, and disbursements; and

9.     Such other and further relief as the Court deems Affinity Labs may be entitled to in law and equity.

Dated:  <u>November 20, 2012</u>

Respectfully submitted,

By:  <u>  /s/ Charles W. Goehringer Jr.          </u>

**Germer Gertz, L.L.P.**
Lawrence Louis Germer
(TX Bar # 07824000)
Charles W. Goehringer, Jr.
(TX Bar # 00793817)
550 Fannin, Suite 400
P.O. Box 4915
Beaumont, Texas 77701
Telephone: (409) 654-6700
Telecopier: (409) 835-2115
llgermer@germer.com
cwgoehringer@germer.com

**Robins, Kaplan, Miller & Ciresi L.L.P.**
Ronald J. Schutz   (MN Bar No. 130849)
(Eastern District of Texas Member)
(Lead Counsel)
Cyrus A. Morton (MN Bar No. 287325)
(Eastern District of Texas Member)
Daniel R. Burgess (MN Bar No. 389976)
(Eastern District of Texas Member)
Shira T. Shapiro (MN Bar No. 390508)
(*pro hac vice to be submitted*)
Kristine Weir (MN Bar No. 393477)
(*pro hac vice to be submitted*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile:  (612) 339-4181
RJSchutz@rkmc.com
CAMorton@rkmc.com
DRBurgess@rkmc.com
STShapiro@rkmc.com
KAWeir@rkmc.com

**Attorneys for Plaintiff Affinity Labs of Texas, LLC**