IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> SAMSUNG ELECTRONICS CO., LTD., § <br> ET AL., § <br> § <br> *Defendant.* § | CIVIL ACTION No. 1-12-CV-557 <br><br> JUDGE RON CLARK |

## MEMORANDUM ORDER CONDITIONALLY GRANTING DEFENDANTS' MOTION FOR TRANSFER OF VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

Plaintiff Affinity Labs of Texas, LLC filed suit against Defendants Samsung, LG, and HTC, and U.S. subsidiaries of each of them, claiming that Defendants' phones, tablets, and other electronic devices infringed five of Affinity's patents related to the delivery of electronic content, principally music. All of the Defendants move to transfer venue from this court to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

The court previously held *Markman* hearings on two of the five patents, has tried Affinity's suits on those two patents against three other defendants, and has a *Markman* hearing on those two patents scheduled in January for two other defendants. Judicial economy strongly favors this court including whatever claim construction disputes the present Defendants may raise on those two patents in that January hearing. The other venue transfer factors weigh in favor of transferring the case. So, having consulted with the Chief Judge of the Northern District of California, this court will retain jurisdiction over the Defendants through the claim

1

construction process in January on the '228 and '833 patents. A conditional transfer of the case will be become effective the day the court issues its claim construction opinion.

## I. Background

Affinity, a Texas limited liability company, brought suit against Samsung, LG, and HTC, and various subsidiaries of those companies. The parent corporation of each Defendant is based in Asia, whereas the subsidiaries are located throughout the United States. The documentation relating to the development of the accused technology, according to the Defendants, is housed mainly in California, Washington, or Asia.

Samsung's accused products include: Android smartphones, Android tablets, feature phones, MP3 players, smart televisions, Windows 7 smartphones, and Windows 8 smartphones.

LG's accused products include: Android smartphones, Android tablets, feature phones, smart televisions, and Windows 7 smartphones.

HTC's accused products include: Android smartphones, Android tablets, Windows 7 smartphones, and Windows 8 smartphones.

## II. Applicable Law

The Defendants move to transfer venue to the Northern District of California pursuant to 28 U.S.C. §1404(a), which permits a district court "[f]or the convenience of the parties and witnesses" to "transfer any civil action to any other district or division where it might have been brought." The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964). As transfer of venue is not a matter of substantive patent law, case law from the Court of Appeals for the Fifth Circuit governs this motion. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319

2

(Fed. Cir. 2008). The threshold inquiry in a transfer of venue analysis under § 1404(a) is whether the plaintiff could have brought the action in the jurisdiction to which the defendant seeks transfer. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003).

If the transferee venue is proper, it is the defendant's burden to demonstrate that the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (*Volkswagen II*). As the Fifth Circuit put it: "he who seeks the transfer must show good cause." *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315.

To decide whether a defendant has met its burden, the court must analyze a set of public and private interest factors, no one of which is dispositive. *Volkswagen II*, 545 F.3d at 315 (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*)). "Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *Volkswagen II*, 545 F.3d at 314 n.10.

### III. Analysis

A. The Northern District of California Is A Proper Venue For This Action

Affinity does not dispute that the Northern District of California is a proper venue for this case. As this matter is not in dispute, the Defendants meet the threshold inquiry for a transfer of venue analysis. *Volkswagen II*, 545 F.3d at 315.

B.  The Public Interest Factors

The Fifth Circuit applies four non-exclusive public interest factors in determining a § 1404(a) venue transfer question – (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law [or in] the application of foreign law.

   *1.  The administrative difficulties flowing from court congestion*

The first public interest factor relates to judicial economy and efficient use of public resources – "the administrative difficulties flowing from court congestion." *Volkswagen I*, 371 F.3d at 203.   Defendants assert that on average the time to trial in all civil cases in the  Northern District of California are only slightly longer than average time to trial in the Eastern District of Texas. Defs.' Mot. to Transfer Venue [Doc. # 67, p. 17].  Affinity argues this case will proceed to trial more quickly in this court because of the fall 2014 trial date, whereas the Northern District of California has an average time to trial of 2.94 years for patent cases.   Affinity's Resp. [Doc. # 73, p. 14].

When this case reaches the Northern District of California, it will not do so as a newly filed complaint, still awaiting answer.  Because the Local Patent Rules of this District were patterned on those of the Northern District of California, the work the parties have already done in exchanging infringement and invalidity contentions and disclosures will not be wasted.  Upon being notified of this order, the court in California can, if it chooses, issue a scheduling order directing the parties to prepare for a claim construction hearing on the three patents not dealt with by this court.  Hopefully the *Markman* order issued by this court for the '228 and '833 patents will be of some help to the California court.

Finally, time to trial is the most speculative of all of the factors. *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). This factor is neutral.

    2.  *The local interest in adjudicating local disputes*

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843 (1947). However, the mere sale of "several" or "some" of the allegedly infringing products in a given district is not enough to shift this factor in favor of one party. *See TS Tech*, 551 F.3d at 1321.

Here, Defendants have places of incorporation and principal places of business outside the Northern District of California, but they have facilities there that employ a large number of individuals. Further, they allege that the substantial majority of the design work in the United States occurred in California or Washington. The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley.

Affinity has its principal place of business in the Western District of Texas, which borders on the Eastern District. There is little or nothing to connect the various defendants to the Eastern District of Texas, except that one of them, the Samsung subsidiary STA, has a principal place of business in the Eastern District of Texas. As to STA, and to some degree Samsung itself, the combination of the locations of Plaintiff's and STA's principal places of business favors retaining venue. As to the other Defendants, this factor is weighted toward transfer.

### 3. *The familiarity of the forum with the law that will govern the case*

The parties do not dispute that both courts are familiar with the relevant law. The court agrees with the parties that this factor is neutral.

### 4. *The avoidance of unnecessary problems in conflict of laws*

As this is a patent case arising under federal law, there are no issues relating to conflict of laws. The court agrees with the parties that this factor is neutral.

## C. The Private Interest Factors

The Fifth Circuit also considers four non-exclusive "private" factors – (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315.

### 1. *The relative ease of access to the sources of proof*

The first private interest factor is the relative ease of access to the sources of proof. *Volkswagen I*, 371 F.3d at 203. The Defendants argue that the majority of the evidence in the United States resides in their research and development facilities in California or in Washington, with no documentation from either LGE or HTC in the Eastern District of Texas. Defs.' Mot. to Transfer Venue [Doc. 67, p. 13]. Samsung states that there is some evidence at the STA facility in the Eastern District of Texas, although it does not regard the operation or function of the accused features. *Id.* According to Samsung, the principal design of the alleged infringing products did not occur in that facility and any evidence that is there "is less controversial and less voluminous than the evidence regarding the operation and function of the accused features." Defs.' Mot. to Transfer Venue [Doc. # 67, p. 13 n. 3]. Affinity states that its documentation is in

Dripping Springs, Texas, and that third-party documentation resides in Frisco, Texas. Affinity's Resp. [Doc. # 73, at 5]. Dripping Springs is in the Western District of Texas, whereas Frisco is in the Eastern District of Texas. Affinity also argues that much of the Defendants' evidence is located outside the Northern District of California or outside the United States entirely. *Id.*

The advent of electronic discovery has not rendered this factor superfluous. *Volkswagen II*, 545 F.3d at 316. In that case the physical evidence included the wreckage of an automobile, the transportation of which had to be considered. Likewise, in *TS Tech*, the Federal Circuit focused on the presence in the transferee venue of "all of the physical evidence, including the headrests." *TS Tech*, 551 F.3d at 1321.

Here Affinity asserts infringement of claims that describe allegedly new and useful ways to use software to achieve desired results with generically described physical components. Nothing new or useful in the way of hardware or devices is claimed or described. Not surprisingly, key evidence will be the design documents and memos together with the source code and the marketing data. This court does not read *Volkswagen II* or *TS Tech* to require a pretense that a software case directed at electronic selection of files and playlists will require searches of Defendants' warehouses of "original" paper documents that the lawyers must manually copy for opponents and then painstakingly transport to court for trial.[1]

---

[1] It is generally recognized that in cases involving recently developed products, electronically stored information (ESI) has, for the most part, taken the place of paper. Format and search methods, not transportation of paper, are the problems to be solved. *See Effective Use of Courtroom Technology: A Judges Guide to Pretrial and Trial*, 64-65(Federal Judicial Center, 2001) (noting even in 2001 that most documents "originate in digital form" and describing the "wasteful and time-consuming paradigm of printing digital material to then scan it and turn it back into digital format. *See also* Chief Judge James Ware, et al., *An E-Discovery Model Order*, http://www.cafc.uscourts.gov/images/stories/announcements/Ediscovery_ Model_Order.pdf (last visited Sept. 13, 2013).

The Defendants have done little to provide evidence to meet its burden of clearly showing that access to sources of proof is more convenient in Northern District of California, particularly because they all have substantial facilities outside the Northern District of California. Granted, Affinity has not established the contrary, but the burden is on the Defendants.

Nevertheless, in patent cases the assumption that evidence comes from the infringer in paper form is now so engrained in the case law that it seems a given that this factor must favor Defendants. They assert the relevant research took place in the Northern District of California or in locations close to it. But, because Defendant relied on assumptions and generalities, and failed to provide evidence of categories and volumes of physical documents, or even better, examples of physical evidence that might have a real bearing on allegations of infringement of patents directed towards playlists and digital selection, there is no basis for the court to assign great weight to this factor.

  *2. The availability of compulsory process to secure the attendance of witnesses*

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. A court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses. Fed. R. Civ. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii). Each party claims that its favored venue has subpoena power over a greater number of its third-party witnesses.

Affinity lists fourteen nonparty witnesses within the trial subpoena power of the Eastern District of Texas. Affinity Resp. [Doc. # 73, p. 8]. Affinity also lists a series of former Samsung employees that reside in Texas. Affinity Resp. [Doc. # 73, p. 9]. Affinity believes these individuals have useful information. The Defendants argue that at least six prior art inventors

reside within the subpoena power of the Northern District of California. Defs.' Mot. to Transfer Venue [Doc. 67, p. 14]. Prior art inventors, while theoretically relevant, rarely testify, and their locations should be given little weight. *Personalweb Techs., LLC v. NEC Corp. of Am., Inc.*, 2013 U.S. Dist. LEXIS 46296, at *32-33 (E.D. Tex. Mar. 21, 2013). While the prior art inventors may not weigh heavily into this calculus, the Defendants also describe, in detail, the interrelation among their design teams and Google employees. Defs.' Mot. to Transfer Venue [Doc. 67, p. 14]. The Defendants name at least three individuals who work for Google and have relevant information. Defs.' Mot. to Transfer Venue [Doc. # 67-1, -3]. Google is not a party to this action and its employees would be beyond the subpoena power of this court, which is not the case in the Northern District of California.

The Defendants provide at least nine potential witnesses within the subpoena power of the Northern District of California, whereas Affinity identified at least fourteen. Given that the Defendants have fewer witnesses and six of them are prior art inventors, this factor favors the Eastern District of Texas.

    *3. The cost of attendance for willing witnesses*

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. The Fifth Circuit's "100 mile" rule applies because the Northern District of California is approximately 2,000 miles from Beaumont, Texas. See *id.* at 205 n. 4. When inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other's is insufficient to affect a transfer of venue analysis. *In re Google Inc.*, 412 Fed. App'x 295, 296 (Fed. Cir. 2011).

Defendants have provided charts with travel times to Beaumont and San Francisco. Defs.' Mot. to Transfer Venue, Exs. J-K [Doc. # 67-17,-18] While the numbers may not be

entirely accurate as the Defendants assumed only one witness traveling from each location, party witnesses for all parties would save significant time by having the trial in the Northern District of California. Defendants also provide information about travel time savings for prior art inventors, but as discussed above, they rarely testify and this information should be given little weight. Affinity does not counter this information with any argument other than the Defendants have not named specific party witnesses they plan to call. Affinity's Resp. [Doc. # 73, p. 12]. This factor favors transfer.

    *4. All other practical problems that make trial easy, expeditious, and inexpensive*

All of the public and private interest factors are part of a transfer of venue analysis, but "judicial economy can be a 'paramount consideration.'" *In re Vistaprint*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) (quoting *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). This case is somewhat unusual in that considerations of judicial economy cut both ways.

All five patents are asserted against each of the Defendants. While there are at least two operating systems involved, and devices sold at different times have varied versions of those systems, many of the accused products for the three Defendants are the same – phones and tablets. The other accused products, smart televisions, are made by two of the Defendants. Judicial economy would be served by having one judge try the case

    On the other hand, this court's familiarity with the '228 and '833 patents gained through prior claim construction hearings and trial of three defendants[2] could weigh heavily in favor of maintaining the action in Texas. *See In re Vistraprint*, 628 F.3d at 1344, 1347 n. 3.

---

[2] *Affinity Labs of Tex, LLC. v. Alpine Elecs.*, Case No. 9-08-cv-171 (settled after *Markman* hearing in *Affinity Labs v. BMW*); *Affinity Labs of Tex, LLC. v. BMW*, Case No. 9-08-cv-164 (claim construction and jury trial); *Affinity Labs of Tex., LLC v. Dice Elecs.*, Case No. 9-08-cv-163 (settled prior to *Markman* hearing).

This court conducted two *Markman* hearings on those patents, after appointing, and consulting extensively with, a technical advisor, Dr. Frank Shipman, Associate Director of the Center for the Study of Digital Libraries and Professor of Computer Science at Texas A&M University. Cases against three defendants were then tried to a jury. This court also has currently pending cases involving those patents against both Ford and General Motors. *Affinity Labs of Tex., LLC v. Ford Motor Co.*, Case No. 1-12-cv-580; *Affinity Labs of Tex., LLC v. Gen. Motors Co.*, Case No. 1-12-cv-582. A claim construction hearing for those patents is scheduled for January 9, 2014 before this court.

Preparing for a *Markman* hearing and drafting the related opinion is one of the most time consuming aspects of patent litigation from a court's perspective. If these were the only patents involved, this factor would tilt the balance toward retention. *See Vistaprint*, 628 F.3d at 1347 But in this case Affinity chose to add three more patents. And, while it should not affect claim construction or invalidity, the accused technology is different. The prior trial against BMW, Kia Motors, and Hyundai, and the two present cases against Ford and GM, all involve automotive systems. The accused products in this case are cell phones, tablets, and smart televisions. Although the court is generally familiar with Defendants' products from other cases, it faces about the same learning curve as a judge in California when considering the other three patents and learning the technology of the accused devices for purpose of infringement analysis.

D. Balancing the Factors

Public interest Factors 1, 3, and 4 are neutral. It is not shown that there will be a significant difference in time to trial of this case between the Northern District of California and the Eastern District of Texas. Both courts are familiar with patent law. There are no conflict of laws issues in this case.

Except as to Defendant STA, public interest Factor 2 weighs in favor of transfer. STA has its principal place of business in the Eastern District of Texas, so there is a local interest in adjudicating the dispute here. But that does not justify severing and retaining the claims against STA in light of significance of the other Factors.[3]

As to the private interest Factors, Defendants provided no evidence of physical evidence to be transferred or of the existence of data retained in paper files. But the advent of electronic data retention and transfer is, at present, discounted in intellectual property law, so Factor 1 favors transfer. Defendants have shown that Factor 3 weighs in favor of transfer, because travel to the Northern District of California is substantially easier for a majority of the witnesses. More witnesses are subject to compulsory process in Texas, so Factor 2 favors retention.

In summary, considering all the factors except public interest Factor 4, judicial economy, the court concludes that as to all Defendants except STA, the Northern District of California is clearly more convenient. When judicial economy is placed on the scale, this court's extensive experience with the '228 and '833 patents weighs in favor of retention of claims against all Defendants arising out those two patents. But there are three other patents at issue, asserted against the defendants' many devices all of which appear to utilize similar technology, so splitting the case among two courts would waste judicial resources.

Prior to issuing this opinion this court conferred with the Chief Judge of the Northern District of California, the Honorable Claudia Wilken, concerning the most efficient way to

---

[3] Compare this case with *Personalweb*, where transfer was denied to a defendant with a facility in the Eastern District of Texas, but there was no dispute over whether relevant documentation existed in the Eastern District, there was no cost savings for willing witnesses, and the localized interests were greater, as the plaintiff, as well as one of the defendants, was actually in the Eastern District of Texas. *Personalweb Techs., LLC v. NEC Corp. of Am., Inc.*, 2013 U.S. Dist. LEXIS 46296, at *60-64 (E.D. Tex. Mar. 21, 2013).

manage this case. It was concluded that transfer of the case after this court completed the *Markman* hearing on the '228 and '833 patents would be the best allocation of judicial resources. The California court would have the benefit of the arguments at the *Markman* hearing and of this court's analysis of those claims.[4] Transfer of all defendants, including STA, for construction of the '947, '390, and '007 patents and trial, would avoid wasteful duplication of effort by two courts on essentially the same issues.

As suggested by Judge Wilken, to avoid the usual delays inherent in a transfer, a copy of this order will be promptly forwarded to the Northern District of California. The Northern District can then, in accordance with its own procedures and protocol, open a case file and assign a judge. That judge will, consistent with other demands on the court's time, have the option of conferring with counsel in this case to efficiently identify time available on its docket to schedule claim construction for the '947, '390, and '007 patents and the trial on all the patents. Because the parties will already know the court and case number upon transfer of the case to California, delay resulting from transfer will be minimized, a concern underlying Public Interest Factor 1 and Federal Rule of Civil Procedure 1.

IT IS THEREFORE ORDERED that Defendants' Motion to Transfer [Doc. # 67] is CONDITIONALLY GRANTED, effective upon the entry by this court of the claim construction order on the '228 and '833 patents.

---

[4] At the very least, if the parties are not satisfied with this court's *Markman* analysis, they will likely present to the California court more sharply focused arguments on a limited number of issues, just as they would on appeal. This court has benefited in the past when a patent it construed was asserted against another defendant in another court. That court adopted all of this court's claim constructions but one, and based on a new argument, arrived at a more accurate construction for that term, which this court was then able to use.

IT IS FURTHER ORDERED that upon receipt of this Court's claim construction order and final order of transfer, the Defendants shall immediately inform the transferee judge and request a status or scheduling conference as appropriate.  Until then all orders entered in the Eastern District remain in effect, and motions concerning this case shall be filed in this court.

So **ORDERED** and **SIGNED** this **17** day of **September, 2013.**

_____
Ron Clark, United States District Judge